

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

September 4, 2019

**BY ECF**

Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

    Re:    *United States v. Jonathan Padilla*, 18 Cr. 454 (KPF)

Dear Judge Failla:

    The Government submits this letter in advance of the sentencing of Jonathan Padilla (the "defendant"), and in response to the defendant's sentencing submission, dated August 20, 2019 ("Def.'s Mem."). As explained below, the Government respectfully submits that a sentence within the range of 78 to 97 months' imprisonment, as called for by the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G."), should be imposed in this case.[1]

### I.    Offense Conduct

    Since at least 2009, the defendant has dealt drugs in and around the Lambert Houses in the Bronx, New York. *See generally* United States Probation Office's Presentence Investigation Report ("PSR") ¶¶ 11-19. During that time, he has worked with others, including several co-defendants in this case, to sell crack cocaine and heroin to addicts throughout the community, and in the process, he has earned thousands of dollars in illicit drug money. *Id.* ¶¶ 11-12. In just six months between May and November 2017, the defendant sold crack cocaine to an undercover officer on *seventeen* separate occasions, as well as a quantity of heroin on one occasion, netting the defendant almost $1,100 in proceeds. *Id.* ¶ 11. During two of these sales—one on May 10, 2017 and another on November 16, 2017—the defendant worked with co-defendant (Lamar Griffin and Anthony Corley, respectively) in making the sales. *Id.* ¶ 12.

    These sales to law enforcement constitute only a miniscule percentage of the defendant's career as a drug dealer. Since 2005, when he incurred a juvenile delinquency adjudication for criminal possession of a controlled substance, *see id.* ¶¶ 15, 45, the defendant has been arrested approximately eighteen times, six for the possession or sale of a controlled substance (not merely

---

[1] As explained in Part II below, the Government submits that this is the correct Guidelines range because it includes criminal history points for the defendant's commission of the charged offense while under a criminal justice sentence, which Probation erroneously omits. This range of 78 to 97 months is also consistent with the stipulation in the parties' plea agreement.

marijuana, the possession and sale of which account for additional arrests). *See, e.g.*, *id.* ¶¶ 14, 46-49, 54-55. In total, the defendant has accepted responsibility for conspiring to distribute 280 to 840 grams of cocaine base, in addition to an unknown quantity of heroin. *Id.* ¶ 4.

## II. The Defendant's Plea and Applicable Guidelines Range

Pursuant to an agreement with the Government, the defendant pled guilty on May 13, 2019, to one count of conspiring to distribute 28 grams and more of crack cocaine, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(B). PSR ¶ 4.[2] In the plea agreement, the parties stipulated that this offense carries a mandatory minimum sentence of five years' imprisonment and that the advisory Guidelines range was 78 to 97 months' imprisonment, based on an offense level of 27 and a Criminal History Category of II. *Id.*

The Probation Office calculates a range of 70 to 87 months' imprisonment, based on an offense level 27 but a Criminal History Category of only I. *Id.* ¶¶ 34-51, 90. The discrepancy stems from the fact that Probation does not add two criminal history points under U.S.S.G. § 4A1.1(d) for the defendants' commission of part of the instant offense while under a criminal justice sentence, including periods of five years' probation imposed on September 28, 2009 in two separate drug cases. *Id.* ¶¶ 47, 48, 91. The Government's position is that—although the 2009 sentences arise from convictions for relevant conduct and therefore are not "prior sentence[s]" under § 4A1.2(a)(1)—two criminal history points are nevertheless assessed because those sentences *are* "sentence[s] countable under § 4A1.2" (defining "Sentences Counted and Excluded") and therefore *are* "criminal justice sentence[s]" under § 4A1.1(d).[3] Accordingly, the Government calculates—and the defense agreed in its stipulation in the plea agreement—that the defendant's Criminal History Category to be II and his Guidelines range is 78 to 97 months' imprisonment.

The Government also notes that a sentence of 78 to 87 months' imprisonment would be within the applicable Guidelines range, regardless of whether the defendant's Criminal History Category is I or II.

## III. Discussion

### A. Applicable Law

Although *United States v. Booker*, 543 U.S. 220, 264 (2005), held that the Guidelines are no longer mandatory, it also held that district courts must "consult" the Guidelines and "take them into account" when sentencing. As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which

---

[2] The PSR erroneously states that the plea was on May 13, 2018, which predates the defendant's arrest. The plea was actually in May 2019.

[3] This Office has formally taken the same position regarding the applicability of § 4A1.1(d) since at least January 2011. The Government notes that within the last 24 months, the Honorable Loretta A. Preska has agreed when sentencing multiple defendants in *United States v. Edwin Romero et al.*, 17 Cr. 123 (LAP).

September 4, 2019
Page 3

"should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

After performing that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," (2) the four legitimate purposes of sentencing, as set forth below, (3) "the kinds of sentences available," (4) the Guidelines range itself, (5) any relevant policy statement by the Sentencing Commission, (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," and (7) "the need to provide restitution to any victims." 18 U.S.C. § 3553(a)(1)-(7); *see Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### B. Analysis

The Government respectfully submits that a sentence within the correctly calculated (and parties' stipulated) Guidelines range of 78 to 97 months' imprisonment is appropriate in light of all of the sentencing factors set forth above, and would be sufficient but not greater than necessary to accomplish the goals of sentencing in this case.

*First*, the nature and circumstances of the offense weigh in favor of such a sentence. As the Court is well aware, the drug trade throughout this city causes immeasurable harm to addicts, their families, and average citizens who are victimized by the crimes that users commit in order to continue feeding their habits. Although the defendant was a drug user, he was also a serious, career drug dealer who routinely sold poison to other people for more than a decade. Although each of his sales may have been in small, street-level quantities, the aggregate weight of drugs that he sold and conspired to sell is extremely significant. In addition, certain communities in the Bronx are especially hard hit by secondary effects of drug activity; and in recent years, the Lambert Houses and greater Tremont neighborhood have seen countless murders, non-fatal shootings, stabbings, robberies, assaults, and other acts of violence, all stemming from battles over drug territory and other drug-related conflicts. The defendant's continuous participation in that market—as a buyer, seller, facilitator, and conspirator for himself and others—contributed in


September 4, 2019
Page 4

material ways to the environment where other violent actors could thrive, prosper, and inflict even greater harms on the rest of the community.

*Second*, the defendant's history and characteristics weigh heavily in favor of a sentence within the Guidelines range of 78 to 97 months' imprisonment. As noted above, the defendant has been arrested almost 20 times, many of which were for possessing and selling controlled substances, and others for possession and sale of marijuana. In 2005, he was adjudicated a juvenile delinquent for criminal possession of a controlled substance; and then, in two separate cases in 2009, he pled guilty to criminal sale of a controlled substance, one of which was on school grounds. Despite these convictions, and more than a dozen other arrests, the defendant continued to sell crack cocaine, heroin, and other drugs. The defendant's sentence must reflect the duration and extent of his criminal livelihood.

Moreover, even since his arrest, the defendant has continued to break rules and find himself in trouble with the authorities. On November 12, 2018, the defendant entered an unauthorized area of the Metropolitan Correctional Center ("MCC"), for which he lost 30 days of commissary privileges. PSR ¶ 8. Then, about six weeks later, he interfered with an MCC security device, for which he lost 27 days of good conduct time and 90 days of commissary privileges, and spend fifteen days in disciplinary segregation. *Id.* ¶ 7. Although the defendant's submission recites the defendant's purported improvements while incarcerated and his aspirations for the future, the Presentence Report makes clear that the defendant does not even have a place to live upon his release because his niece finds him "difficult to get along with" and does not want him to reside with her child. *Id.* ¶ 64. Absent extremely significant changes in the defendant's life—changes that are not reflected in his disciplinary history at the MCC—it is likely that he will revert to selling drugs and other criminality. Thus, the defendant's history and characteristics, and what they indicate about his future, warrant the significant sentence of incarceration called for by the Guidelines.

*Finally*, a sentence within the Guidelines range is needed to adequately punish the defendant and to demonstrate the seriousness of his conduct, including his years of criminal activity, which has contributed to so much harm in the Lambert Houses and broader Tremont community. Such a sentence would also promote respect for the law and serve to deter the defendant from future crimes. Looking beyond the defendant himself, in a case like this, where the defendant was known to be a member of a large conspiracy that was charged federally, there is a significant need for general deterrence—*i.e.*, for others who aspire to profit from the drug trade to learn that such activity will result in a lengthy sentence if prosecuted in federal court. In addition, a Guidelines sentence in this case will help protect the public from the defendant, his co-conspirators, and anyone else deterred by the incarceration of defendants in this case.

### IV.     Conclusion

For the foregoing reasons, the Government respectfully requests that the Court impose a sentence within the Guidelines range of 78 to 97 months' imprisonment.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

By: _____
Frank J. Balsamello / Sarah Krissoff
Assistant United States Attorneys
(212) 637-2325 / -2232

cc:     James Neuman, Esq., *counsel for defendant Jonathan Padilla* (by ECF)