UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v.-<br><br>JONATHAN PADILLA,<br><br>                    Defendant. | 18 Cr. 454-6 (KPF)<br><br>**ORDER** |

KATHERINE POLK FAILLA, District Judge:

This Order resolves the second motion of Defendant Jonathan Padilla seeking compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). The first, filed in May 2020, was resolved by Order dated July 13, 2020. (Dkt. #267). *See United States* v. *Padilla*, No. 18 Cr. 454-6 (KPF), 2020 WL 3958790, at *1 (S.D.N.Y. July 13, 2020) ("*Padilla I*"). There, the Court concluded that because Mr. Padilla had already tested positive for the COVID-19 virus and been classified as asymptomatic, his pandemic-based arguments did not suffice to establish "extraordinary and compelling reasons warrant[ing]" a reduction to his sentence, nor had he established that "such a reduction [would be] consistent with the applicable policy statements issued by the Sentencing Commission." *Padilla I*, 2020 WL 3958790, at *1 (quoting 18 U.S.C. § 3582(c)(1)(A)(i)) (alterations added). Similarly, the Court concluded that Mr. Padilla's arguments about the conditions of his confinement at the Federal Correctional Institution in Elkton, Ohio ("FCI Elkton"), and his practical inability to participate in that facility's Residential Drug Abuse Program ("RDAP"), were not adequate bases for compassionate release. *Id.* at *1-2.

Three months after the Court's decision, in October 2020, Mr. Padilla filed a *pro se* application that has been construed by the Court as a second request for compassionate release. (*See* Dkt. #296; *see also* Dkt. #298 (court order seeking briefing on legal issues raised by Mr. Padilla's application)). Defense counsel filed supplemental briefing on November 30, 2020, and December 7, 2020 (Dkt. #301, 305); the Government filed opposition submissions on December 5 and 7, 2020 (Dkt. #302, 304); and Mr. Padilla filed a *pro se* supplemental letter on January 5, 2021 (Dkt. #307).

Since *Padilla I* was issued, the Second Circuit has provided additional guidance to district courts in resolving motions pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). To review, Congress had previously delegated responsibility to the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction." 28 U.S.C. § 994(t). The Sentencing Commission determined that a defendant's circumstances met this standard, *inter alia*, when the defendant was "suffering from a terminal illness" or a "serious physical or medical condition ... that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility," or if, in the judgment of the BOP, the defendant's circumstances are extraordinary and compelling for "other reasons." U.S.S.G. § 1B1.13(1)(A) & Application Note 1(A), (D). Last year, however, the Second Circuit clarified that with respect to a compassionate release motion brought by a defendant (as distinguished from the BOP), the policy statement set forth in U.S.S.G. § 1B1.13 is "not 'applicable,'" and that

2

neither it nor the BOP's Program Statement constrains a district court's discretion to determine what reasons qualify as "extraordinary and compelling." *United States* v. *Brooker*, 976 F.3d 228, 235-36 (2d Cir. 2020); *see also United States* v. *Lisi*, No. 15 Cr. 457 (KPF), 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) ("[T]he Court finds that the majority of district courts to consider the question have found that the amendments made to 18 U.S.C. § 3582(c)(1)(A) grant this Court the same discretion as that previously give to the BOP Director, and therefore the Court may independently evaluate whether [a defendant] has raised an extraordinary and compelling reason for compassionate release."); *see generally United States* v. *Roney*, — F. App'x —, No. 20-1834, 2020 WL 6387844 (2d Cir. Nov. 2, 2020).[1]  That said, while the Court does not consider itself bound by U.S.S.G. § 1B1.13, it does look to that provision for guidance.  *See United States* v. *Thrower*, No. 04 Cr. 903 (ARR), 2020 WL 6128950, at *3 (E.D.N.Y. Oct. 19, 2020).

The Court begins with the issue of exhaustion.  As suggested in its prior order (Dkt. #298), the Court believes the instant motion to be a permissible second or successive motion under 18 U.S.C. § 3582(c)(1)(A)(i).  The Court also believes that as a separate motion, it requires a separate exhaustion of Mr. Padilla's administrative requirements.  However, the Court understands from

---

[1] The Second Circuit remanded the matter to the district court after concluding that the lower court had misapprehended the limits of its own discretion.  In so doing, the Court did not define what qualifies as "extraordinary and compelling" under 18 U.S.C. § 3582(c)(1)(A), other than to recall the directive in 28 U.S.C. § 994(t) that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."  *United States* v. *Brooker*, 976 F.3d 228, 237-38 (2d Cir. 2020).

defense counsel that Mr. Padilla emailed a second request for compassionate release to the Warden at FCI Elkton on November 19, 2020 (Dkt. #301 at 3), and that more than 30 days have passed without receiving a response. Accordingly, the Court proceeds to consider the merits of Mr. Padilla's application — whether he has identified "extraordinary and compelling reasons" warranting compassionate release. The Court finds that he has not.

Defense counsel acknowledges that certain of Mr. Padilla's claims from *Padilla I* are repeated in his second motion, including claims about the sanitation and hygiene practices at FCI Elkton and about Mr. Padilla's inability to participate in the RDAP; counsel notes, however, the provision of new information by Mr. Padilla, including:

> (1) his housing unit has never been sanitized and the breathing air is all "recirculated"; (2) he has been offered little or no recreation, programming, and educational opportunities; (3) the conditions at Elkton are so dire and risky that it causes the inmates there to be "unwelcome" elsewhere; and that (4) "mass COVID testing" has now been halted, making it impossible to know the extent of COVID infections.

(Dkt. #301 at 1). These facts do not compel a different conclusion.

Several of Mr. Padilla's claims are interrelated, in the sense that they concern the sanitation and public health practices employed at FCI Elkton in the midst of the COVID-19 pandemic, and, by extension, the risk to inmates of illness or death because of the pandemic. On this point, the Court agrees with Mr. Padilla that the realities of prison life (in particular, the concentration of persons in prison housing) can result in sub-optimal sanitation practices, but it also accepts the BOP's representations that appropriate cleaning and

4

sanitation supplies have been provided to FCI Elkton. (Dkt. #304 at 1). Further, to the extent that Mr. Padilla's current arguments are variations on a prior theme of concern about contracting (or, in this case, contracting again) COVID-19, the Court does not find them persuasive. It is regrettable that Mr. Padilla is one of nearly 25 million Americans to have contracted the COVID-19 virus, see https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days (last accessed January 22, 2021), but it is also the case that he remained asymptomatic throughout his active infection period.[2] More broadly, the Court notes that, in sharp contrast to the significant spike in cases a few months ago, FCI Elkton lists only four inmates and thirty staff members who currently test positive for COVID-19. *See* https://www.bop.gov/coronavirus/ (last accessed January 22, 2021).

Mr. Padilla repeats his concerns about the prevalence of lockdowns at FCI Elkton, and the correlative lack of educational and other rehabilitative programming. The Court has previously addressed Mr. Padilla's inability to participate in RDAP, *Padilla I*, 2020 WL 3958790, at *1, and will not repeat its discussion here. The Court also observes a certain tension between Mr. Padilla's arguments about public health issues and his arguments about diminished programming; put simply, FCI Elkton is reducing programs to tamp

---

[2]   Given this fact, and given the fact that the Centers for Disease Control and Protection consider the risk of reinfection to be "rare," https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-sick/end-home-isolation.html (last accessed January 22, 2021), the Court does not believe that FCI Elkton's testing protocols, individually or in combination with other factors identified by Mr. Padilla, amount to an "extraordinary and compelling reasons" for his release.

5

down on the spread of the virus and to promote public health at the facility.  It is an unfortunate consequence of these salutary measures that Mr. Padilla is losing out on opportunities to educate himself in prison, but such is not a basis for compassionate release.  The Court will not force the BOP into the Hobson's choice of deciding between public health measures and educational programming by finding a reduction in the latter to constitute "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A)(i).

In his most recent *pro se* submission, Mr. Padilla relates certain recent events in his family, including the death of his brother and co-defendant, Efrain Reyes, and the problems faced by the mother of Mr. Padilla's child and that child.  The Court has previously extended its condolences to Mr. Reyes's family, and it repeats them here.  However, the facts that Mr. Padilla identifies do not alter the Court's original conclusion that to release Mr. Padilla after he has served less than half of his sentence would undermine the purposes of sentencing set forth in 18 U.S.C. §§ 3553(a) and 3142(g).  The Court has previously noted that Mr. Padilla has a substantial criminal history, including approximately 18 criminal arrests; that he was deeply involved in the charged conspiracy; and that he has received disciplinary infractions while incarcerated.  *Padilla I*, 2020 WL 3958790, at *2 (citing Final Presentence Investigation Report ("PSR") ¶¶ 11-19; Dkt. #259 at 9).  Even as the Court recognizes the qualitative differences for Mr. Padilla in serving a sentence under the restrictions imposed by the pandemic, it does not believe immediate release or a reduction in sentence is appropriate.

    For all of these reasons, Mr. Padilla's second request for compassionate release is DENIED. The Clerk of Court is directed to terminate the motion at docket entry 296.

    SO ORDERED.

Dated:  January 25, 2021
           New York, New York

*[signature: Katherine Polk Failla]*

_____
KATHERINE POLK FAILLA
United States District Judge